UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In Re: | Bankruptcy Court |
| RICHARD DAVID BOWMAN, | Case No. GL 03-14918 |
| | Chapter 7 |
| Debtor. | Adversary Proceedings |
| _____/ | No. 04-88387 |
| | |
| ROSE ELLEN BAREHAM, | |
| Chapter 7 Trustee, | |
| | |
| Plaintiff/Appellee, | |
| | File No. 1:05-CV-259 |
| v. | |
| | HON. ROBERT HOLMES BELL |
| RICHARD DAVID BOWMAN, | |
| | |
| Defendant/Appellant. | |
| _____/ | |

## OPINION

This is an appeal from a decision of the Bankruptcy Court in favor of Appellee Rose Ellen Bareham, Chapter 7 Trustee, which was delivered on the record on January 13, 2005. The underlying proceeding involved the trial of an adversary proceeding brought by Appellee against Appellant Debtor Richard David Bowman to deny the Debtor a discharge pursuant to 11 U.S.C. § 727(a). For the reasons that follow, the decision of the Bankruptcy Court to deny the discharge is affirmed.[1]

---

[1] The Court did not schedule oral argument in the instant case. Although FED. R. BANKR. P. 8012 provides that oral argument should liberally be allowed, oral argument is not allowed if "the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." *Id.* Neither

**I.**

On December 12, 2003, Debtor filed a Chapter 7 case in the Bankruptcy Court. Thereafter, on May 18, 2004, the Trustee filed a complaint to deny discharge under 11 U.S.C. § 727(a)(3) for failure to keep records, 727(a)(4) for false oaths or accounts, and 727(a)(5) for failure to explain loss. The case was tried before the Bankruptcy Judge on January 13, 2005.

At trial, Debtor was the only witness. According to his testimony, since the late 1970s, Debtor has had an interest in early 1970s Pontiac Firebirds. In the early years, as a hobby, he began to purchase parts from individuals who were junking their cars. Later, he began to refurbish 1970s-era Firebirds. Since 1996, the sale of Firebird parts and the refurbishing of vehicles has provided his principal income. (Tr. at 15.) Debtor also performed some odd jobs for family and friends, including landscaping and maintenance, and he occasionally bartered such services for reduction in his rent or for work on cars that he could not perform. (Tr. at 15-16.) Bowman testified that he kept no records of his purchases or sales of parts, and he conducted such transactions mostly in cash. (Tr. at 19-21.) He also never kept a written inventory of his parts stock. (Tr. at 21.) In addition, because of a prior banking dispute, he reported he was unable to get a bank account after 2001. (Tr. at 30, 62.) He therefore did not have any banking records such as deposit slips, canceled checks or

---

party has requested oral argument and the Court is persuaded that the legal arguments are fully presented by the record and briefs in the instant case. Accordingly, the Court finds that oral argument will not significantly aid the decisional process.

statements since that date. (Tr. at 29-30.)   He did, however, occasionally deposit checks received from others into his sister's account, and she would pay him back the monies deposited.   Debtor did not keep any records reflecting how much he deposited and how much was paid back. (Tr. at 32.)  He did not file an income tax return from 1997 to 2003. (Tr. at 36.)

In response to specific questioning about his restoration business, Debtor acknowledged receiving a total of more than $100,000 between 2000 and 2003: $5,000 or $7,500 from Ed Smith in 2000; $5,000 from Ed Smith in 2001; $10,000 from Tad Baker in 2001; $16,000 from Patrick Frink in 2001; $16,000 from Scott Schaeffer in 2001; $15,865 from John Cox in 2002; $6,000 from Bruce Johnson in 2002; $1,500 from Bruce Rabare in 2003; between $6,300 and $8,500 from Robert Burdock in 2003; $10,000 from Dennis Flowers in 2003; $15,000 from Patrick O'Rourke in 2003.  (Tr. at 42-55.)  Debtor did not keep a record of disbursements or receipts. Debtor testified that he kept a file folder for each car he was refurbishing.  In that folder, he included a "buy-sell" agreement between the car owner and himself, which stated the work to be done and the total amount to be paid by the owner. Some of the agreements referenced the amount of the deposit, others indicated only a total price, and still others reflected a price less than the total amount Debtor eventually received. (Tr. at 42-55, 88-89.)  Debtor also placed in the designated folder those receipts he possessed that related to the vehicle being refurbished. (Tr. at 34, 45.)  When Debtor transferred a vehicle at the end of the restoration, he turned over the manila folder to the

3

owner or purchaser and did not keep a copy. (Tr. at 89-90.) Debtor therefore possessed no records in relation to the completed refurbishing projects for Baker, Frink and Johnson. (Tr. at 90.)

Debtor testified that he sold approximately $400 per month in parts in 2001. In 2002, he sold only approximately $200 per month in parts. In 2003, he sold approximately $100 per month in parts. (Tr. at 61-62.) Debtor acknowledged that he kept no records of the parts transactions, though he explained that he foresaw no reason to keep track of such transactions. (Tr. at 62.) Debtor also kept no records of his rent payments on his business property, though he did reconstruct a partial history of his payments. (Tr. at 90.) He did not, however, keep a record of any offsets or rent received in exchange for his landscaping or maintenance services. (Tr. at 88.)

Debtor testified that he had located and provided the trustee with a box of receipts for purchases made from two suppliers, Finish Master and Painter's Supply. Those receipts were admittedly incomplete. (Tr. at 65-66.) He also provided copies of his business phone records, his receipts for trash pick-up by Grainger/Allied, his credit card purchases, and his storage unit charges. Debtor also obtained some records from his creditors because he had not kept records. (Tr. at 68-70, 92, 95, 98.)

Following the close of proofs and arguments, the Bankruptcy Court issued a comprehensive decision on the record. The Bankruptcy Court addressed the Trustee's three grounds for denying discharge in reverse order. The court dismissed the Trustee's claim

under § 727(a)(5) that Debtor had failed to explain a loss of assets. The court concluded that the Trustee had really made no effort to prove the ground. Second, the Bankruptcy Court found that the trustee had failed to prove that Debtor had knowingly and fraudulently or in conjunction with the case made a false oath or account as prohibited by § 727(a)(4). The Bankruptcy Court therefore also dismissed the Trustee's claim under that provision. (Tr. at 106-07.) In addition, the court found that the Debtor was truthful and credible in his testimony and that he had not attempted to stretch the truth or feign ignorance. (Tr. at 107-08.)

The principal question in issue before the Bankrupty Court and the subject of the major portion of the opinion was the Trustee's claim under § 727(a)(3), which provides in relevant part that the court shall grant a discharge unless:

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case.

*Id.* The Bankruptcy Court, applying *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880 (6th Cir. BAP 1999), held that the provision required a debtor to provide creditors with sufficient information to ascertain the debtor's financial condition and financial dealings "with substantial completeness and accuracy for a reasonable period past to present." (Tr. at 108.) The court acknowledged that the adequacy of records must be determined on a case-by-case basis and in consideration of a broad range of circumstances. (Tr. at 109.) Using

5

the plain meaning of the word "ascertain," the Bankruptcy Court held that a debtor's mere estimation of financial matters was insufficient. The court also held that the duty to maintain records fell squarely on the debtor and neither the court nor a creditor was required to sift through a morass of unorganized checks and bank statements. (Tr. at 110.)

Applying these standards to the particular services provided by Debtor, the Bankruptcy Court found that Debtor had engaged in no significant landscaping activities in exchange for compensation. As a result, the court concluded that the lack of documentation of any activities performed and compensation received was not material. Similarly, the court concluded that the sale of a few videos about his restorations was *de minimis*. In addition, the court found that Debtor's exchange of services with a trucker friend was conduct consistent with a mere friendship, for which records need not be kept. (Tr. at 111.)

With respect to Debtor's sale of parts, however, the court held that the lack of records was more problematic. The court found that, while the sale of parts began as a hobby, it grew into a business, though Debtor never began keeping records. The court held that while the party seeking denial of discharge had the burden of proving the inadequacy of records, once those records were determined to be inadequate, the burden was on the debtor to establish a justification for the inadequacy. (Tr. at 112.) Considering the history of the parts sales and the descending volume of sales preceding the bankruptcy, the court concluded, that, while the question was a close one, Debtor did not make a material omission in failing to keep records of the parts transactions. (Tr. at 112-13.)

Finally, with respect to Debtor's business of refurbishing vehicles, the Bankruptcy Court found that between 2001 and 2003, the Debtor had received from ten individuals in excess of $100,000 in payments for refurbishing. (Tr. at 117.) The court found the amount of money involved was substantially more than *de minimis* and that Debtor had failed to meet his obligation to keep records in a fashion that permitted the trustee to determine whether Debtor made any fraudulent conveyances or whether anyone received an avoidable preference. (Tr. at 116.) The court therefore concluded that the records were inadequate to permit the trustee to judge Debtor's transactions or administer the estate. (Tr. at 116.)

The court next considered whether Debtor had shown sufficient justification for not having kept the records. The court found that a reported break-in to his business premises did not provide adequate justification because Debtor did not indicate that any records were stolen. Further, the court found that Debtor's inability to obtain a bank account, even if true, did not excuse his need to keep records in an alternate fashion. As a consequence, the Bankruptcy Court held that the Trustee had proved a cause of action under 11 U.S.C. § 727(a)(3) that Debtor had failed to keep records without a justifiable excuse. The court therefore denied discharge. (Tr. at 117-18.)

## II.

A district court has jurisdiction to hear an appeal from the final judgment of the bankruptcy court, pursuant to 28 U.S.C. § 158(a)(1); FED. R. BANKR. P. 8001. A district court, in reviewing the determinations of the bankruptcy court on a question of law, applies

a *de novo* standard of review. *See* FED. R. BANKR. P. 8013; *Wesbanco Bank Barnesville v. Rafoth*, 106 F.3d 1255, 1259 (6th Cir. 1997). Findings of fact made by the bankruptcy court will not be set aside unless they are clearly erroneous. FED. R. BANKR. P. 8013. "When a question in the bankruptcy context involves a mixed question of law and fact, 'we must break it down into its constituent parts and apply the appropriate standard of review for each part.'" *In re American HomePatient, Inc.*, 420 F.3d 559, 563 (6th Cir. 2005) (quoting *Wesbanco*, 106 F.3d at 1259).

### III.

Appellant Debtor contends that the Bankruptcy Court erred in concluding that Debtor's records were inadequate for the size and type of business he conducted. He further contends that the Bankruptcy Court improperly concluded that the Trustee had met her burden of proving that the lack of records made it impossible to ascertain Debtor's financial records.

A debtor will be denied a discharge if he has "failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3). The provision "requires the debtor to provide creditors 'with enought information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.'" *Strbac*, 235 B.R. at 882 (quoting *In re Martin*, 141 B.R. 986, 995 (Bankr. N.D. Ill. 1992)).

The purpose of this provision is "to give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3rd Cir. 1992). It also ensures that "creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history." *Meridian Bank*, 958 F.2d at 1230. However, the Bankruptcy Code "does not operate in a 'draconian fashion to require maintenance, preservation, and production of comprehensive records of every minute detail of a debtor's financial and business activity as a precondition to a grant of discharge.'" *Ag Credit, ACA v. Walton (In re Walton)*, 165 B.R. 610, 616 (Bankr. N.D. Ohio 1994)(quoting *James v. McCoy (In re McCoy)*, 114 B.R. 489, 500 (Bankr. S.D. Ohio 1990)). The adequacy of a debtor's records "must be determined on a case by case basis. Considerations to make this determination include debtor's occupation, financial structure, education, experience, sophistication and any other circumstances that should be considered in the interest of justice." *Strbac*, 235 B.R. at 882 (internal quotations omitted).

The party objecting to discharge has the burden of proving by a preponderance of the evidence that the exception applies. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); *see also* FED. R. BANKR. P. 4005; *Grogan v. Garner*, 498 U.S. 279 (1991). The Trustee, therefore, has the initial burden of proving Debtor's lack of recorded information within the meaning of the statute. *Meridian Bank*, 958 F.2d at 1233. Under § 727(a)(3), however, once the plaintiff has made an initial showing that the debtor lacks records, the

9

burden of proof shifts to the defendant to justify the lack of records. *Id.*; *Cadle Co. v. Jacobowitz (In re Jacobowitz)*, 296 B.R. 666, 671 (Bankr. S.D.N.Y. 2003); *Strbac*, 235 B.R. at 883; *In re Devaul*, 318 B.R. 824, 829 (Bankr. N.D. Ohio 2004).

Debtor argues that the trustee failed to prove that his records were inadequate for the size and type of business he operated. He contends that his business began as a hobby and was never a large business. He therefore asserts that the buy-sell agreements and limited receipts he kept were sufficient for the nature of his business, especially since his customers paid in lump sums and he did not allocate overhead expenses to each customer.

The Court is persuaded that the Bankruptcy Judge's findings and conclusions were amply supported by the record. Although Debtor may not have made a large profit on his refurbishing business, his own testimony revealed that he had received more than $100,000 from customers of that business during the three years preceding the bankruptcy filing. Nowhere did Debtor accurately record the amounts received or the costs associated with the refurbishing of vehicles. Instead, in a haphazard fashion, Debtor merely placed the buy-sell agreements in folders with the receipts associated with a particular vehicle, if he happened to have such receipts. Even some of these folders were not kept and available to creditors, as Debtor delivered the records to the customer at the end of any job. In addition, the actual cash received from customers was not always revealed in the buy-sell agreement. Instead, only the Debtor's testimony at trial evidenced the sums received, which might be more or less than the amounts recorded on the buy-sell agreements. "The bankruptcy code does not

10

impose upon the creditors the obligation to take the Debtor's word that his income was insubstantial. Creditors are entitled to see it for themselves from contemporaneous, accurate and reliable records that the debtor is required to maintain and produce." *Strbac*, 235 B.R. at 885. While Debtor's business may have been small, according to Debtor's own testimony, the business was his primary source of income after 1996. Yet he never kept any record that would enable a creditor to determine precisely what that income was. Debtor never filed a tax return, did not keep a bank account, did not keep any ledger records, did not obtain or keep receipts for most of the parts he purchased and used, and did not make any effort to account for his income or expenses. The record clearly demonstrates that no creditor could ascertain Debtor's financial condition from the records. *See Strbac*, 235 B.R. at 884 (quoting *United States v. Trogdon (In re Trogdon*, 111 B.R. 655, 659 (Bankr. N.D. Ohio 1990) ("The absence of checks, check registers or receipts . . . frustrates any attempt to determine Debtor's financial history and transactions."). No creditor could determine whether an avoidable preference was received by another creditor. No creditor could determine from the available records whether Debtor had made a fraudulent conveyance to another during the preceding three or six years of filing that would be recoverable under 11 U.S.C. § 544.

The applicable cases clearly hold that a creditor is not required to sift through a mishmash of unrelated records. *See In re Juzwiak*, 89 F.3d 424, 429 (7th Cir. 1996) ("Creditors are not required 'to sift through documents and attempt to reconstruct the flow of the debtor's assets.'") (quoting *In re Frommann*, 153 B.R. 113, 118 (Bankr. E.D.N.Y.

11

1993)). They are not obligated to speculate as to the financial history or to reconstruct that history. *Id.* at 428.

Debtor argues that his case is akin to *Brown v. Brown*, 56 B.R. 63 (Bankr. D.N.H. 1985), in which the debtor, who had a small business repairing wrecked vehicles, was deemed to have kept adequate records in the circumstances. In *Brown*, unlike in the instant case, the debtor maintained extensive banking records that were easily sufficient to demonstrate that only $3,100 in disbursements were unaccounted for. Further, the gap in records was explained by the debtors' marital separation that disrupted the wife's record-keeping. And a variety of debt payments, attorney fees and food and clothing expenses from the period easily explained the $3,100 in issue.

Here, despite handling far more substantial sums of money, Debtor quite simply made no effort to keep records of his financial transactions. He argues that he had no reason to believe they would be needed for any purpose. That explanation is patently frivolous in light of his obligation under the income tax laws to account for income received. In other words, his explanation is sensible only if one accepts the premise that a debtor can simply take the position that he does not see a need to keep records because he has no intention of filing such returns. Clearly, in light of the monies changing hands, debtor had every reason to keep records, both for income tax purposes and as a prerequisite to his bankruptcy filing.[2]

---

[2]Although the Court has referenced the income tax requirements as a basis for rejecting Debtor's explanation for not keeping records, the Court in no way is suggesting that it rests its finding on Debtor's possible violations of the income tax code.

Debtor argues that, notwithstanding the substantial evidence that Debtor kept no systematic records and notwithstanding the fact that most of the evidence of actual sums received by Debtor was obtained through his oral testimony, not through his records, Debtor makes the absurd argument that the Trustee has failed to demonstrate that the Debtor's financial condition could not be ascertained from his records. *See Juzwiak*, 89 F.3d at 429 (holding that it was error for bankruptcy court to require creditors to reconstruct the history by requesting documents from customers and through reliance on debtor's oral testimony). Contrary to Debtor's argument, it is abundantly apparent that no reasonable person could accurately construct Debtor's financial history from the records he kept. Moreover, the Trustee is not required to demonstrate that it would be impossible to seek and obtain records from other sources sufficient to reconstruct the record. *See In re Wazeter*, 209 B.R. 222, 229 (W.D. Mich. 1997) ("[N]o court has suggested . . . that a debtor is relieved from the burden of providing records unless the creditor can show the impossibility of discovering each peice of necessary financial information. The debtor's obligation to produce records remains a prerequisite to discharge under the statute.") The Bankruptcy Judge clearly, cogently, and properly found that Debtor had failed to meet his obligations under § 727(a)(3) and that his financial condition could not be ascertained with any reasonable degree of certainty from the records.

Finally, Debtor argues that the absence of fraud or deception militates against a finding that he had failed to keep the necessary records. The Court rejects the proposition.

13

As Debtor himself acknowledges, fraudulent intent is not necessary under § 727(a)(3) for a determination that the debtor failed to keep records.  *See Juzwiak*, 89 F.3d at 430; *In re Nemes*, 323 B.R. 316, 325 (Bankr. E.D.N.Y. 2005); *Martin*, 141 B.R. at 995.  While the Bankruptcy Judge credited Debtor's testimony and found him to have testified honestly, that finding in no way mandates a conclusion that Debtor's records met the statutory standard.

In sum, the Court finds no error in the determinations of the Bankruptcy Judge and in denying debtor a discharge pursuant to 11 U.S.C. § 727(a)(3).

**IV.**

For the foregoing reasons, the Court finds that the Bankruptcy Judge's factual findings were not clearly erroneous and his applications of law were legally correct.  *Wesbanco*, 106 F.3d at 1259.  Accordingly, the decision of the Bankruptcy Court to deny debtor a discharge under 11 U.S.C. § 727(a)(3) will be affirmed.  An order consistent with this opinion will be entered.


Date:     January 3, 2006                /s/ Robert Holmes Bell
                                         ROBERT HOLMES BELL
                                         CHIEF UNITED STATES DISTRICT JUDGE